IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMBER MARIE PEACE, | ) | CASE NO.  3:25-CV-02147-JJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Amber Peace ("Plaintiff" or "Peace"), challenges the final decision of Defendant, Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

In May 2023, Peace filed an application for POD, DIB, and SSI, alleging a disability onset date of November 24, 2022,[2] and claiming she was disabled due to heart murmur, bone spurs, bulging discs, and

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.
[2] At the hearing, Peace amended her alleged onset date to May 19, 2023.  (Transcript ("Tr.") 17.)

1

fibromyalgia.   (Transcript ("Tr.") 17, 60, 65.)   The applications were denied initially and upon reconsideration, and Peace requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 17.)

On September 26, 2024, an ALJ held a hearing, during which Peace, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On October 10, 2024, the ALJ issued a written decision finding Peace was not disabled.  (*Id.* at 17-29.)  The ALJ's decision became final on August 11, 2025, when the Appeals Council declined further review.  (*Id.* at 1-6.)

On October 8, 2025, Peace filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 5-6.)  Peace asserts the following assignment of error:

(1) The ALJ erred in creating an RFC that failed to account for the impact that Peace's chronic pain syndrome and chronic migraine with aura would have on her ability to stay on task or be present in the workplace.

(Doc. No. 5 at 3.)

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Peace was born in December 1980 and was 43 years old at the time of her administrative hearing (Tr. 17, 27), making her a "younger" person under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  She has at least a high school education.  (Tr. 27.)  She has no past relevant work. (*Id.*)

### B.   Relevant Medical Evidence[3]

On February 17, 2023, Plaintiff saw Raymond Paz, M.D., to discuss medication changes and her

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the Commissioner's Brief.  The Court notes that Peace's brief did not include a statement of facts.  (Doc. No. 5.)  Instead, Peace stated she "agrees generally" with the summary of the factual evidence in the ALJ's decision and that "[p]oints raised in this appeal involve the ALJ's interpretation of those facts and the opinions based upon them" as set forth in her brief.  (*Id.* at 2.)

2

EMG results.  (*Id.* at 369.)  Dr. Paz noted the EMG findings suggested "chronic C6 and C7 radiculopathy," which did not "correlate with [Peace's] overall symptoms," which were "primarily right-sided."  (*Id.*)  Peace took Gabapentin and Duloxetine for her chronic pain and Relpax for her migraines.  (*Id.*)  On examination, Dr. Paz found normal station and gait.  (*Id.*)  Dr. Paz recommended she trial Gabapentin during the day and have a formal neurology consultation.  (*Id.* at 370.)  Dr. Paz noted Peace had "moderate to severe pain." (*Id.*)  Dr. Paz referred Peace for a steroid injection to help her chronic pain.  (*Id.*)

On July 31, 2023, Peace saw Dr. Paz to request a handicap placard.  (*Id.* at 367.)  Peace reported walking with a cane, which was causing discomfort in her shoulders and upper back.  (*Id.*)  Dr. Paz noted Peace took Gabapentin three times a day along with duloxetine, and she had met with the pain clinic regarding injection therapy.  (*Id.*)  On examination, Dr. Paz found Peace to be slow moving and she had a "disturbed" gait.  (*Id.*)  During a walker trial, Peace walked effectively with a four-wheel walker.  (*Id.*)  Dr. Paz provided the handicap placard and recommended Peace obtain a walker.  (*Id.*)  Dr. Paz opined that Peace's "chronic physical pain limits her ability to walk long distances."  (*Id.* at 368.)

On November 6, 2023, Peace saw Rachel Bailey, D.O., to establish care and reported being prescribed Cymbalta, Neurontin, and Methocarbamol.  (*Id.* at 445.)  She told Dr. Bailey she had been out of Cymbalta for a month.  (*Id.*)  Peace complained about how the Methocarbamol made her feel.  (*Id.*)  Dr. Bailey recommended decreasing Peace's Methocarbamol dose.  (*Id.*)  Peace also reported memory issues because of her medications.  (*Id.* at 446.)  On examination, Dr. Bailey found decreased sensation in the bilateral lower extremities and the right upper extremity, normal gait, and intact motor function.  (*Id.* at 448.)  Dr. Bailey referred Peace to pain management.  (*Id.* at 445.)

On November 15, 2023, Dr. Paz wrote a letter stating that Peace's pain syndrome had "escalated to the point that she was unable to continue working and ultimately has remained unable to work due to chronic pain (while in Idaho)."  (*Id.* at 536.)  Dr. Paz stated that it was his opinion that while Peace was in Idaho,

3

her "pain was limiting her ability to provide meaningful work without significant morbidity," and he thought things had not changed much since Peace moved to Ohio.  (*Id.*)  Dr. Paz recommended that Peace be considered for "temporary disability while she undergoes evaluation and treatment for her pain disorder with a provider/providers in Ohio."  (*Id.*)

On December 6, 2023, Peace saw Dr. Bailey for follow up and reported doing well on the decreased dose of Methocarbamol.  (*Id.* at 439-40.)  Peace told Dr. Bailey her pain was worse than it was at her last appointment, but that this was closer to her normal baseline.  (*Id.* at 441.) Peace wanted to increase her Cymbalta dose.  (*Id.*)  She told Dr. Bailey she took eletriptan for migraines approximately twice a week. (*Id.* at 440.)  On examination, Dr. Bailey found decreased sensation in the bilateral lower extremities and the right upper extremity, normal gait, and intact motor function.  (*Id.* at 443.)  Dr. Bailey increased Cymbalta.  (*Id.* at 440.)

On December 8, 2023, Peace saw Kaitlin Martin, APRN-CNP, for pain management.  (*Id.* at 435.) Peace reported "a lot of pain" that radiated down her spine, as well as "overall myalgias" and pain that "seem[ed] to 'settle in her joints.'"  (*Id.* at 436.)  She told Martin she had undergone a cervical epidural steroid injection recently and it caused severe pain; she was uninterested in injections at that time.  (*Id.*) Peace also endorsed numbness and tingling, as well as weakness, in the bilateral upper and lower extremities. (*Id.*)  Peace stated she often dropped things.  (*Id.*)  Physical therapy aggravated her back pain. (*Id.*)  Peace reported doing daily yoga at home.  (*Id.*)  She endorsed daily headaches with occasional severe headaches.  (*Id.*)  While Robaxin helped her fatigue and Cymbalta helped her skin sensitivity, she felt Gabapentin did not help her pain.  (*Id.*)  On examination, Martin found "extreme tenderness to palpation" of the cervical, thoracic, and lumbar paraspinals, as well as the other posterior neck musculature.  (*Id.* at 437.) Martin also found decreased sensation in the left arm and leg.  (*Id.*)  Martin noted Peace demonstrated

4

"exaggerated pain behaviors." (*Id.*)  Martin increased Gabapentin and ordered lab work and x-rays. (*Id.* at 438.)

On April 24, 2024, Peace saw Martin for follow up and reported she had increased her Gabapentin with no improvement. (*Id.* at 653-54.)  Peace told Martin she was taking Robaxin at night and sometimes throughout the day, which did not help her pain but made her feel loopy and kept her from thinking about the pain as much. (*Id.* at 654.)  Peace also endorsed "burning" in her neck and that radiated into her arms. (*Id.*)  A cervical MRI taken on April 16, 2024 revealed "[m]ild to moderate spinal canal stenosis at the C5-6 level due to a combination of degenerative changes in the disc and uncovertebral joints," "moderate severity right and mild left foraminal stenosis," and "[m]ild spinal canal stenosis and bilateral foraminal stenosis at the C4-5 level." (*Id.* at 655.)  A lumbar MRI taken that same day revealed "[m]oderate-sized left foraminal disc protrusion at the L3-4 level," "moderate stenosis of the left neural foramen and left subarticular recess," "[d]isc material abut[ting] the exiting left L3 nerve root in a foraminal location," "[m]oderate stenosis of the left subarticular recess with mild spinal canal stenosis at the L4-5 level secondary to a broad based left central disc protrusion," and "[c]hronic bilateral pars defects of L5." (*Id.*)  On examination, Martin found "extreme tenderness to palpation" of the cervical, thoracic, and lumbar paraspinals. (*Id.* at 658.)  Martin also found as "extreme tenderness to palpation" of the other posterior neck musculature, as well as decreased sensation in the left arm and leg. (*Id.*)  Martin noted Peace demonstrated "exaggerated pain behaviors." (*Id.*)  Martin increased Gabapentin, continued Cymbalta and Robaxin, and prescribed Baclofen. (*Id.* at 659.)

## C.     State Agency Reports

On December 11, 2023, state agency reviewing physician Leslie Arnold reviewed the record and found as follows: "Medical evidence is insufficient to assess the current severity of alleged impairments and therefore a CE is necessary. However, none will be scheduled due to the claimant's failure to cooperate. Consequently, the claim is being denied due to insufficient evidence." (*Id.* at 61-62.)

5

On February 8, 2024, on reconsideration, Mehr Siddiqui, M.D., reviewed the file and opined that Peace could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (*Id.* at 73-74, 81-82.)  She could stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (*Id.* at 73, 81.)  She could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. (*Id.*)  Her ability to balance, stoop, kneel, crouch, and crawl was unlimited. (*Id.*)  She must avoid all exposure to hazards. (*Id.* at 74, 82.)

**D.      Hearing Testimony**

During the September 26, 2024 hearing, Peace testified to the following:

- She lives with her spouse and father-in-law. (*Id.* at 39.)  She holds a valid driver's license, but she tries not to drive. (*Id.* at 40.)  Her nerves act up and her leg "will kick out unexpectedly." (*Id.*)  Her medications also make her drowsy. (*Id.*)  She stopped driving in November 2022. (*Id.*)

- She cannot work full-time because she cannot stand or sit for anything more than five to ten minutes. (*Id.* at 43.)  She needs to switch positions. (*Id.*)  If her body is cooperating, she will change positions or sit in the recliner. (*Id.* at 48.)  If her body does not cooperate, she will fall over when she stands up and she will spend the rest of her day laying down. (*Id.*)  She spends the majority of her day laying down. (*Id.*)

- She drops things a lot. (*Id.* at 43.)  Her left foot drags and sometimes goes numb, which causes her to fall. (*Id.*)  She spends most of her life in bed with her heating pad. (*Id.*)  She cannot bend at the waist without "excruciating pain." (*Id.*)  She can squat, but she is slow to get up and it causes pain. (*Id.*)  Her doctor placed her on a five-pound lifting restriction. (*Id.*)  She has trouble using her hands. (*Id.* at 44.)  She cannot feel her fingertips most of the time and has a hard time gripping things. (*Id.*)  It is difficult for her to write because her hand jerks. (*Id.*)  Her doctors think she has a nerve impingement issue. (*Id.*)  Her left hand is worse than her right. (*Id.* at 47.)

- She gets two to three hours of sleep a night and does not nap during the day. (*Id.* at 45.)  Her doctors prescribed her sleep medication in the past, but they did not work well. (*Id.*)  She has an "extreme sensitivity to medications." (*Id.*)

- She uses a shower chair. (*Id.*)  She cooks sometimes. (*Id.* at 45-46.)  She can dust and rinse dishes at the sink. (*Id.* at 46.)  She cannot vacuum, do laundry, or mop. (*Id.*)  Sweeping is also difficult for her. (*Id.*)  She cannot dust anything over her head. (*Id.*)  She does not wear anything that has buttons or zippers. (*Id.* at 47.)

- Her hobbies consist of reading, writing, and drawing. (*Id.* at 46.)  She used to be an avid outdoors person. (*Id.*)

6

- If she tries to go to Walmart with her husband, she cannot make it from the handicap spot to the door before her left side starts hurting. (*Id.* at 48.)  She tries to use a cane to help, but the pain is so bad that by the time they return from the store she is in bed for the rest of the day. (*Id.*)  She uses her cane anytime she leaves the house. (*Id.*)  She leans on the walls when she is at home. (*Id.*)

- Her medications cause forgetfulness and memory issues. (*Id.* at 49.)

The VE testified Peace had past work consisting of a composite job of drug and alcohol abuse counselor and program manager.  (*Id.* at 52.)  The ALJ then posed the following hypothetical question:

> First hypothetical, assume that a hypothetical individual of the claimant's age, education and work experience has the residual functional capacity for work at the light exertional level.  Postural limitations of occasional climbing of ladders, ropes or scaffolds, frequent climbing of ramps and stairs, frequent use of the bilateral lower extremities for operation of foot controls.  Manipulative limitations of frequent use of the bilateral upper extremities for reaching, handling and fingering.  Environment limitations to avoid all exposure to moving mechanical parts and high exposed places.  Additional environmental limitation to avoid more than occasional concentrated exposure to irritants such as fumes, odors, dust and gases.  Ms. Srinivasan, would a hypothetical individual with that residual functional capacity be able to perform the identified past relevant work?

(*Id.* at 52-53.)

The VE testified the hypothetical individual would be able to perform Peace's past work consisting of a composite job of drug and alcohol abuse counselor and program manager. (*Id.* at 53.)  The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as sales attendant, store cashier, and merchandise marker. (*Id.*)

The ALJ modified the hypothetical to include a sit/stand option. (*Id.* at 54.)  The VE testified that past work and the previously identified job of merchandise marker would remain. (*Id.*)  The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as routing clerk and collator operator. (*Id.*)

7

The ALJ modified the hypothetical to limit the hypothetical individual to sedentary exertion.  (*Id.* at 55.)  The VE testified the hypothetical individual would be able to perform other representative jobs in the economy, such as information clerk, inspector and tester, touchup screener, and document preparer.  (*Id.*)

In response to questioning from the ALJ, the VE testified that most employers would tolerate time off task up to and including 10% of the workday and no more one unscheduled absence a month.  (*Id.* at 56-57.)

### III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4)*, 416.920(a)(4).  See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from

a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Peace was insured on the amended alleged disability onset date, May 19, 2023, and remains insured through September 30, 2026, the date last insured ("DLI").  (Tr. 17-18.)  Therefore, in order to be entitled to POD and DIB, Peace must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2026.

2. The claimant has not engaged in substantial gainful activity since May 19, 2023, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease/acute traumatic injury of the cervical spine/cervical radiculopathy/disc spur/bulging discs;

9

asthma/chronic sinusitis, status-post nasal surgery; chronic pain syndrome; and chronic migraine with aura (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: postural limitations of occasional climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent use of the bilateral lower extremities for operation of foot controls. Manipulative limitations of frequent use of the bilateral upper extremities for reaching, handling, and fingering. Environmental limitations to avoid all exposure to moving mechanical parts and high exposed places. Additional environmental limitations to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, and gases.

6.   The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on December **, 1980 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 24, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-28.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported

10

by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the

Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

In her sole assignment of error, Peace argues that the ALJ erred in failing to account for how her chronic pain and migraines would affect her attendance and her ability to remain on task in the workplace despite finding her chronic pain syndrome and chronic migraines with aura to be severe impairments at Step Two.  (Doc. No. 5 at 3.)  Peace asserts the ALJ "further erred in failing to fully consider the testimony of the vocational expert," as the VE testified that being absent more than one day a month and off-task more than 10% of the workday would be work preclusive.  (*Id.* at 4.)  Therefore, Peace maintains, the ALJ erred in formulating the RFC and finding Peace capable of engaging in substantial gainful activity.  (*Id.*)

The Commissioner responds that substantial evidence supports the RFC.  (Doc. No. 6 at 5.)  The Commissioner argues that the RFC was consistent with certain medical evidence and more restrictive than the limitations opined by state agency reviewing physician Dr. Siddiqui.  (*Id.* at 5-6.)  In addition, the Commissioner asserts that Peace has not identified any medical opinions showing she had greater limitations than those included in the RFC.  (*Id.* at 6.)  The Commissioner maintains that the Court should reject Peace's

12

argument that the ALJ erred in failing to include an off-task and absence limitation in the RFC, as "'[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition.'" (*Id.*) (quoting *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013)). The Commissioner argues the Court should also reject Peace's argument that the ALJ erred in failing to include additional limitations in the RFC because Peace testified that she spent most of her day laying down, as "'an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.'" (*Id.* at 7) (citation omitted).

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. §§ 404.1546(c), 416.946(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why

13

the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

The ALJ considered Peace's chronic pain and migraines in the RFC analysis. (Tr. 23-27.) The RFC analysis included findings unsupportive of disability, such as:

14

- "She was maintained on Relpax for headaches/migraines as the medication helped (3F/7)."

- "The doctor stated that the claimant's chronic pain issues limited her ability to walk long distances (3F/6). However, in all examinations by this doctor prior to this visit, it was stated that the claimant had normal gait and station, normal strength in the extremities including normal grip strength, and there were no remarks about problems walking long distances (3F/7, 10-11, 14)."

- "The claimant was given Flexeril and Toradol and felt improvement; prescriptions of Flexeril and prednisone were given, and she was discharged in good condition (2F/6). There were no remarks that the claimant could not sit, stand, or walk for more than five to 10 minutes, and there were no remarks that she had any issue with gait or balance, or that she was using an assistive device to ambulate (2F/1-8)."

- "Upon examination, the nurse practitioner stated the claimant had exaggerated pain behaviors as she had extreme tenderness to palpation in cervical paraspinals and other posterior neck musculature, and extreme to the thoracic and lumbar paraspinals (5F/15)."

- "Physical examination stated the claimant had normal mood, affect, and behavior, cranial nerves were intact, she had normal musculoskeletal findings and there were no remarks about any gait issue or that she was ambulating with a cane (11F/4)."

- "Additionally, an examination in July 2024 by a clinical geneticist found the claimant had normal muscle strength and tone, no abnormal posturing or spasticity, normal reflexes in all limbs, and there was no evidence that the claimant had a gait or balance impairment or that she ambulated with an assistive device (15F)."

(*Id.* at 23-26.)

In weighing and analyzing Dr. Siddiqui's and Dr. Paz's opinions, the ALJ found as follows:

> The claimant was evaluated by State agency medical consultants at the initial and reconsideration level of review (2A; 4A; 6A; 8A). There was insufficient evidence at the initial review, so no opinions were rendered (2A; 4A). Upon reconsideration, Mehr Siddiqui, M.D. opined that the claimant was limited to light exertional work except occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; and avoid all exposure to hazards such as unprotected heights (6A; 8A). This opinion was somewhat persuasive since as limitation to light exertional work with postural limitations and to avoid hazards was consistent with the overall due to the claimant's cervical, thoracic, and lumbar impairments (1F/11-17; 2F/1-11; 3F/7; 5F/33-36; 7F/8-10; 13F/15-16). However, no manipulative limitations were included in the opinion, which is inconsistent with the claimant's chronic C6 and C7 radiculopathy as well as some examinations that found she had decreased sensation in the bilateral upper and lower extremities (3F/7; 5F/15, 26). In addition, no respiratory limitations were assessed related to the claimant's chronic sinusitis (11F). Therefore, the undersigned limited her to frequent use of the bilateral lower extremities for

15

operation of foot controls, frequent use of the bilateral upper extremities for reaching, handling, and fingering, and to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, and gases in the residual functional capacity assessment herein to account for these issues.

Raymond Paz, M.D., the claimant's prior primary care physician, submitted a letter dated November 15, 2023 (10F). Dr. Paz stated that he treated the claimant for many years, and that due to her pain syndrome, it limits her ability to work without significant morbidity, she was unable to continue working, and that she should be considered for temporary disability while she undergoes evaluation and treatment for pain disorder (Id.). Dr. Paz also made a statement in the medical treatment records in July 2023 that the claimant's chronic pain issues limited her ability to walk long distances, and he ordered a wheeled walker since the cane she was using was causing discomfort to her shoulders and upper back (3F/5-6). These opinions were not persuasive. First, there was no functional analysis explaining what the claimant's work-related abilities and/or limitations were except that could not work and could not walk long distances which are both vague and conclusory statements. Statements that a claimant is unable to work are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein, which are issues reserved to the Commissioner, who cannot abdicate their statutory responsibility to determine the ultimate issue of disability. Moreover, Dr. Paz stated in his letter that the claimant should be considered for "temporary disability while she underwent treatment" which suggests that the claimant's physical state at the time he wrote the letter was not permanent and was instead time limited. Most notably, in all examinations by Dr. Paz prior to his prescription of a wheeled walker and statement that she had limitations walking long distances, he stated that the claimant had normal gait and station, normal strength in the extremities including normal grip strength, and there were no remarks about problems walking long distances (3F/7, 10-11, 14). Examinations by other doctors and nurse practitioners in the record did not support the claimant medically required an assistive device as their exam results noted she was ambulatory without assistance, had full range of motion, no to extreme cervical, thoracic, and lumbar tenderness (noting she had exaggerated pain behaviors), intact motor function, intact coordination, intact gait, no lower extremity edema, but with decreased sensation in the bilateral upper and lower extremities (2F/1-8; 5F/15, 21, 26; 11F/4; 13F/18; 14F/10; 15F). Therefore, due to the above, Dr. Paz's opinions were not persuasive.

(*Id.* at 26-27.)

Substantial evidence supports the ALJ's RFC findings. First, "a diagnosis alone does not establish that a condition is disabling, nor does it establish the extent, if any, of the functional limitations caused by

16

the condition." *Baker v. Colvin*, No. 1:15-CV-00910, 2016 WL 4128435, at \*13 (N.D. Ohio Aug. 3, 2016) (citing *Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990)).

Second, the Court notes that, other than stating in a single sentence that she "testified at the hearing that due to her chronic pain, she spends the majority of the day lying down," Peace fails to challenge the ALJ's subjective symptom analysis. (Doc. No. 5 at 4.) Thus, any challenge to the ALJ's subjective symptom determination is waived. It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See, e.g., Kennedy v. Comm'r of Soc. Sec.,* 87 Fed. App'x 464 (6th Cir. 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050, 118 S. Ct. 1370, 140 L.Ed. 2d 518 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant).

Third, the Court finds the Sixth Circuit's decision in *Lipanye v. Commissioner of Social Security* to be instructive:

> The administrative law judge properly asked a hypothetical question about the residual functional capacity and ability to engage in work of a *hypothetical* plaintiff who was off-task 10% of the workday. *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) (ALJ may pose questions that differ from those ultimately adopted and this does not mean that the vocational expert's answer about the hypothetical individual binds the ALJ). By posing the question, the administrative law judge did not make a finding or bind himself to a finding that plaintiff was off-task at least 10% of the workday. **Nothing in the medical record would support inclusion of such a limitation**.

802 F. App'x 165, 170 (6th Cir. 2020) (italics in original, bold added). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Id.* (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

It is the ALJ's job to weigh the evidence and resolve conflicts, and he did so here. While Peace would weigh the evidence differently, it is not for the Court to do so on appeal. The findings of the

17

Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton*, 246 F.3d at 772-73.  There is no error.

### VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: June 2, 2026                                               *s/ Jonathan Greenberg*
                                                                         Jonathan D. Greenberg
                                                                         United States Magistrate Judge

### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**